Frank Chabotar *v.* S. Klein Department Store and American Mutual Liability Insurance Co. Frank Chabotar, Appellant.

Argued April 9, 1976, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*Gerald J. Haas,* for appellant.

*Joseph Hakun,* with him *Hollis Hurd,* and *Mac-Coy, Evans & Lewis,* for appellees.

OPINION BY JUDGE BLATT, October 15, 1976:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County dismissing the appeal of Frank Chabotar (claimant) whose petition for further medical services, filed with the Workmen's Compensation Board (Board), now the Workmen's Compensation Appeal Board, was denied as being untimely.

The claimant had suffered a compensable injury in a work related accident on October 28, 1965 while in the employ of S. Klein Department Store. On July 25, 1968, the referee assigned to hear the claimant's original petition for benefits awarded compensation consistent with the following finding of fact:

"3. As a result of said occurrence, claimant became temporarily totally disabled on November 13, 1965 and remained so disabled until December 3, 1965, when he returned to full employment *with some residuals of the said injury, but without loss of earning power.*" (Emphasis added.)

In addition to his award of compensation, the referee ordered as follows:

"Upon the payment of all compensation, interest and medical and hospital expenses, pursuant to the foregoing award, *all compensation thereunder is hereby terminated,* effective December 3, 1965." (Emphasis added.)

No appeal was taken at the time, but the claimant filed the instant petition more than two years later, on September 22, 1970, asking for further medical services in accordance with Section 306(f) of The Pennsylvania Workmen's Compensation Act[1] (Act), 77 P.S. §531. At the time the claimant's petition was filed, the relevant portions of Section 306(f) provided as follows:

---

[1] Act of June 2, 1915, P.L. 736, *as amended.*

"(f) During the first six months after disability begins, the employer shall furnish reasonable surgical and medical services, medicines, and supplies, as and when needed, unless the employe refuses to allow them to be furnished by the employer . . . . The board may order further medical, surgical and hospital services after the end of the six month period, *if it is established that further care will result in restoring the injured employe's earning power to a substantial degree.*"

The Board through its referee had originally ordered all compensation terminated as of December 3, 1965, even though a finding was made as noted above that the claimant still experienced residual effects of the injury. After December 3, 1965, however, there had been no loss of earning power. At the time when the claimant petitioned the Board for further medical services, therefore, his earning power had ostensibly been fully restored. He argues, however, that his petition for further medical services reopens the question as to whether or not the injury is now causing him to suffer a loss of earning power. We do not believe that Section 306(f) affords a procedure to reopen that question. Instead, it would appear that this section presumes that any claim for further medical benefits must necessarily presume that a loss of earning power had already been established by prior findings of the Board pursuant to other proceedings in which that issue may be raised such as the claimant's original claim petition in this case. To conclude otherwise would lead to the absurd result that a claimant, having suffered a compensable injury could petition, at *anytime in the future,* for further medical services, even years after compensation had been terminated. We do not believe that this was the intent of the General Assembly in passing Section 306(f) of the Act.

The claimant argues, of course, that the referee's finding as to the presence of residuals after the date when compensation was terminated suggested that the referee was merely *suspending* compensation after that date, thereby allowing the claimant 350 weeks within which to assert a claim before the Board pursuant to Section 413 of the Act, 77 P.S. §772,[2] that he was again suffering a loss of earning power. We agree with the Board that the referee's use of a word so fundamental in workmen's compensation law as "terminated" rather than "suspended" was not a casual oversight on his part but a definite indication that all disability had terminated in spite of some presence of residual effects from an injury.

Once a finding has been made that all disability has terminated, the claimant can reopen the issue as to loss of earning power only by a petition for reinstatement filed before the Board, pursuant to Section 413 of the Act, 77 P.S. §772, i.e. within two years after the most recent payment of compensation. The most

---

[2] At the time the claimant's petition was filed the relevant provisions of Section 413 of the Act, 77 P.S. §772, provided as follows:

"The board, or referee designated by the board, may, at any time, modify, reinstate, suspend, or terminate an original or supplemental agreement or an award, upon petition filed by either party with such board, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. . . . Provided, That, except in the case of eye injuries, *no agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the board within two years after the date of the most recent payment of compensation* made prior to the filing of such petition. . . . And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the accident that payments under *the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable* [350 weeks], unless it be shown that the loss in earnings does not result from the disability due to the injury."

576

recent payment of compensation in this case had been mailed to the claimant on August 28, 1968 and, although the claimant assigns error in the Board's failure to have made any findings as to when this payment was actually received by the claimant, we observe that claimant's pleadings before the Board impliedly admit at least that payment was received in August. The two-year period in which a reinstatement petition could have been filed, therefore, had clearly expired at the end of August 1970. The claimant, therefore, having failed to file a petition for reinstatement within that time, may not now appeal for a reopening of the referee's finding that the claimant has suffered no loss of earning power after December 3, 1968. The claimant's appeal to the court below from the Board's denial of his petition for further medical services was, therefore, properly dismissed. Accordingly, the order of the court below is affirmed.

ORDER

AND Now, this 15th day of October, 1976, the decision and order of the Court of Common Pleas of Philadelphia County affirming the decision of the Workmen's Compensation Board and dismissing the appeal of Frank Chabotar is hereby affirmed.